Dierkson v. The Cass County Mill and Elevator Company.

DIERKSON v. THE CASS COUNTY MILL AND ELEVATOR COMPANY ET AL.

1. **Warehouseman:** BAILMENT: SALE. Where grain was stored in the elevator of another party, who gave to the owner of the grain a receipt therefor, and the same was mingled with a common mass of like grain, which was constantly being increased and diminished by additions and shipments, but the amount in store was always equal to that received for storage, and the elevator was subsequently burned, *held:*

    1. That the receipt evidenced a contract, binding the elevator company to return to the bailor an amount of grain equal to that received.

    2. That the liability of the elevator company would not be affected by the fact that it had on hand an equal like quantity of grain with that received.

    3. That if the transaction was a sale, the company was liable for the value of the grain.

    4. That if it was a bailment, they were bound to return an amount equal in quantity and quality from the mass with which it was mingled, with the bailor's assent.

    5. That if they mingled it with the mass without his consent and shipped therefrom, they were guilty of conversion.

    6. That the measure of damages for the grain stored was its value at the time it was demanded, with six per cent interest thereafter.

*Appeal from Cass Circuit Court.*

MONDAY, DECEMBER 13.

THE plaintiff filed his petition in substance alleging that on the 5th day of November, 1875, he placed in defendants' elevator 462 20-60 bushels of wheat, subject to storage, taking a receipt in writing therefor, as follows: " Received in store, of

C. Dierkson, twelve loads of wheat, subject to storage. No. of bushels, 462 20-60."

That defendants, in violation of said contract of storage, mixed said wheat with that of other parties and their own, and shipped the same beyond their control. That plaintiff demanded said wheat of defendants, which demand was refused, and that at that time said wheat was worth one dollar and ten cents per bushel.

The defendants answered, admitting that they received 462 20-60 bushels of wheat of plaintiff and issued to him a storage receipt, a copy of which is attached to the petition.

The defendants allege " that at the time of delivering said wheat defendants were purchasing and receiving wheat for other parties, and that all the wheat so bought and delivered was being delivered at the same point where plaintiff was delivering his, and the same was being mixed with wheat of like grade as that of defendants' and others who were delivering; all of like grade being mixed in one common mass. That defendants were at the same time shipping wheat from said common mass, always retaining enough of the common mass to pay off all outstanding storage receipts. That defendants continued to receive and ship from said common mass up to the 14th day of February, 1874, at which time their said elevator burned, without any fault of defendants, and consumed a large quantity of wheat over and above what would be sufficient to pay off all outstanding storage receipts, viz: the sum of five thousand bushels."

There was a jury trial, and a verdict and judgment for plaintiff for $506.45. The defendants appeal.

*Temple & Phelps*, for appellants.

Where grain belonging to different owners has been mingled in a common mass, with their consent, each may maintain replevin for his share. (*Young v. Miles*, 20 Wis., 615; *Rohilly v. Wilson*, Chic. Leg. News, Vol. V, No. 19.) To have constituted the contract a *mutuum*, the parties must have agreed at the time of making it that it should be a loan,

that the articles should be returned in kind and quality. (Bouvier's Law Dic.) A *mutuum* looks to the benefit of the borrower. (Story on Bailments, §§ 84 and 47, 228.) A receipt is presumptive evidence of title in the holder of it. (Code, § 2171.) It is the duty of the court to instruct the jury fully upon all the points they are called upon to decide. (*Owen v. Owen*, 22 Iowa, 270.)

*Brown & Churchill*, for appellee.

A written instrument acknowledging the receipt of a quantity of grain in store imports a bailment and not a sale. (*Goodyear v. Ogden & Pearl*, 4 Hill (N. Y.), 104; *Stapleton v. King*, 33 Iowa, 28.) Such a delivery of grain would constitute a *mutuum* contract. (Bouvier's Law Dic.) Where grain is deposited with a warehouseman, and by consent of the owner mixed with other like grain, with the understanding that the depositor shall receive the market price therefor when he desires to sell, or a like amount in quality or quantity, the depositary takes the risk of loss or accident. (*Chase v. Washburn*, 1 Ohio St., 244; *Johnston v. Brown*, 37 Iowa, 200; *Norton v. Woodruff*, 2 Comst., 153; *Ewing v. French*, 1 Blackf., 345.)

DAY, J.—The plaintiff introduced in evidence the receipt, a copy of which is attached to the petition, and proved the delivery to the defendants, in their warehouse, of the quantity mentioned in the receipt, that the same had been demanded, and the demand was refused, and the value of the wheat.

The defendants proved that the elevator burned on the 15th of February, 1874, containing 5900 bushels of wheat, and more than enough to cover the amount they had received in store.

The court instructed the jury as follows: " 1. This receipt, which has been given in evidence, and which, it is admitted,

1. WAREHOUSE-MAN: bailment: sale.

the defendants gave when they received the wheat in question, is a contract as well as a receipt, and by its terms the defendants were bound to keep

Dierkson v. The Cass County Mill and Elevator Company.

the wheat so received by them, and return the same to plaintiff. If the wheat so received was in the defendants' elevator at the time said elevator was burned and was destroyed in the fire, the defendants are not liable therefor. Or, if the wheat in question was, at the time of the delivering of the same to the defendants, with the knowledge and consent of plaintiff, mingled with the other wheat in said elevator, belonging to defendants and other parties, and the mass of said wheat with which said wheat in question was so mingled remained in said elevator at the time of the fire and was destroyed thereby, the defendants would not be liable therefor. But if the mass of wheat with which that in question was mingled had been removed from said elevator and sold by defendants before the fire, they are liable therefor; and the question of their liability is not in any manner affected by the fact, if it be a fact, that they had on hand at the time of the fire an amount of wheat equal to or greater than the amount received from the plaintiffs, and of like quality with that received."

" 2. The question of fact, therefore, for the jury to determine from the evidence is, whether at the time of the burning of the defendants' elevator the wheat in question, or the mass with which it was mingled at the time it went into the elevator (if the mingling was with plaintiff's consent), was present in said elevator and destroyed in said fire. If you find from the evidence that neither the wheat delivered by plaintiff nor the mass with which it was mingled was destroyed in said fire, your verdict should be for the plaintiff, and the measure of damages is the value of the wheat at the time the same was demanded by plaintiff, with six per cent interest from that date. But if you do not so find, your verdict will be for defendants."

The defendants asked the following instruction, which the court refused to give: " If the jury should find from the evidence in the case that the wheat was mixed with that of other parties and of these defendants, they must further find that the mixture was made by defendants, and was made without the consent of plaintiff, before you can find for plaintiff."

The giving of these instructions and the refusal to give that

asked, are asssigned and urged as error. There was no error in the court's action. The transaction between plaintiff and defendants constituted either a sale or a bailment; and it is not in this case material which, for in either case if the jury found the existence of the facts stated in the instructions, the plaintiff must recover. / If the transaction was a sale, then by the terms of their contract the defendants are liable for the value of the wheat purchased. If the transaction was a bailment, then the defendants were under obligation to return to plaintiff either the identical wheat deposited, or a like quantity and quality from the mass with which it was mingled with plaintiff's express or implied assent; and if they shipped off and sold plaintiff's wheat or the mass with which it was mingled, they are guilty of a conversion, and are liable for its value. / See *Johnston v. Browne*, 37 Iowa, 200, and cases cited. This case reviews the authorities cited and relied upon by appellants. See, also, *Pierce v. Schenck*, 3 Hill, 28.

The judgment is

AFFIRMED.